UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL VANDERLINDEN,

       Plaintiff,                    No. 22-11060

v.                              Honorable Nancy G. Edmunds

CITY OF WARREN,
    et al.
        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [14]**

       This matter is before the Court on Defendants City of Warren and Mayor James Fouts' motion to dismiss Plaintiff's complaint.[1] (ECF No. 14.) Plaintiff filed a response and Defendants filed a reply. (ECF Nos. 20, 21, 32, 33.) Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that the allegations, facts, evidence and legal arguments are presented adequately in the written submissions so that oral argument would not significantly aid the Court's decision. For these reasons, the Court will decide the matter without a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

---

[1] The clerk entered a default as to the third named Defendant Jerry Bell for failure to plead. (ECF No. 26.) Defendant Bell's motion to set aside clerk's entry of default (ECF No. 27) will be addressed in a separate order.

## I.      Facts and Background

Plaintiff Joel Vanderlinden ("Plaintiff") is a resident of the City of Warren and an active participant in its political realm.[2] (ECF No. 1 ¶¶ 5, 11.) He has regularly attended Warren City Council meetings since 1983 and has voiced his political opinions at most of the meetings he attended. (*Id.* ¶ 12.) Defendant James Fouts ("Defendant Fouts") is the mayor of the City of Warren. (*Id.* ¶ 7.) Defendant Fouts supports a redevelopment project in the City of Warren that includes the building of a luxury hotel, high-end apartments, and a retail center. (*Id.* ¶ 13.) The mayor's plan proposes putting $30 million in city funds toward the project. (*Id.* ¶ 14.) At least some city council members have publicly opposed the plan. (*Id.* ¶ 15.) At various Warren City Council meetings Plaintiff has made public comments against this redevelopment plan and what he perceives as corruption in the city government. (*Id.* ¶ 18.)

On July 13, 2021, Plaintiff attended a regularly scheduled Warren City Council meeting. (*Id.* ¶ 19.) During the meeting and while Plaintiff was at the podium making comments, Defendant Jerry Bell began heckling him. (*Id.* ¶ 19.) Defendant Bell is a resident of the City of Warren and a friend and supporter Defendant Fouts. (*Id.* ¶¶ 9, 19.) According to Plaintiff, Plaintiff asked Defendant Bell to allow him to finish his statement, but Bell continued to heckle him, even after Plaintiff had finished his comments. (*Id.* ¶ 20.) The city council meetings are recorded and the incident is captured on video, submitted by Defendants. (*Id.* ¶ 20; *see also Warren City Council Meeting* recording, July 13, 2021,

---

[2]      "Because the defendants move for judgment on the pleadings, this court accepts the complaint's well-pleaded factual allegations as true and construes the complaint in the light most favorable to" the plaintiff. *Daily Services, LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

55:00-59:55.) The video shows that during Plaintiff's address to city council, someone from the audience interrupts him. *Warren City Council Meeting* recording, July 13 2021, 58:24-:58. Plaintiff stays in place at the podium but turns toward the voice and says, "Shut up, buddy. I'll take you out." *Id.* at 58:26-:58. Then Plaintiff turns to the front, the off-camera voice is heard again and council asks Plaintiff to "please wrap it up." *Id.* Plaintiff then says to the city council, "Will you please tell him to shut up?" Council indicates they will not. *Id.* Plaintiff responds, "OK. I'll conclude my comments," and then concludes his comments to city council. *Id.* The video shows that Plaintiff returned to a seat near Defendant Bell, but remained standing while the two of them exchanged words. The words they exchanged are not clear from the video, and on the video the council is seen and heard addressing both Plaintiff and Defendant Bell by name and saying "Please" and reminding them that council has a meeting to run. *Id.* at 58:58-59:47. A security officer walks into the aisle between the two and Plaintiff sits down. *Id.* According to the complaint, the meeting concluded and the parties went their separate ways. (ECF No. 1 ¶ 21.)

On the date of the next city council meeting, July 27, 2021, Plaintiff received a phone call from the Warren Police Department. (*Id.* ¶ 26.) Plaintiff was notified that they had a warrant for his arrest in connection with assault allegations by Defendant Bell. (*Id.* ¶ 26.) Plaintiff turned himself in at the Warren Police Department. (*Id.* ¶ 27.) While Plaintiff was there, one of the police officers told him that the original orders were for Plaintiff to be publicly arrested later that day at the city council meeting. (*Id.* ¶ 27.) Plaintiff was not released from custody in time to participate in the July 27 city council meeting. (*Id.* ¶ 29.)

Plaintiff alleges that Defendant Mayor Fouts hated him because of Plaintiff's criticism at the meetings, and that Fouts instructed Bell to attend the city council meetings

and protect the Mayor and his agenda, and deter Plaintiff from speaking at the meetings. (*Id.* ¶¶ 22-24.) Plaintiff alleges that Defendants Fouts and Bell concocted a plan to silence or deter Plaintiff from making more comments against the Mayor's political agenda by accusing Plaintiff of assaulting Defendant Bell during the July 13, 2021 city council meeting. (*Id.* ¶ 22.) Plaintiff alleges that Defendant Fouts told Bell to "get [Joel Vanderlinden's] ass" after the July 13 meeting. (*Id.* ¶ 25.) When Defendant Bell was ready to drop the charges against Plaintiff, Defendant Fouts had "a fit" and ordered Bell to continue to pursue the charges. (*Id.* ¶ 30.) The assault charges against Plaintiff were dismissed with prejudice on December 7, 2021. (*Id.* ¶ 31.)

Plaintiff brings federal claims under 42 U.S.C. § 1983 for First Amendment retaliation as to all individual Defendants (count I), 42 U.S.C. § 1983 *Monell* liability as to Defendant City of Warren (count II), 42 U.S.C. § 1983 malicious prosecution as to all individual Defendants (count IV), and 42 U.S.C. § 1985 conspiracy as to all Defendants (count VI). The Court dismissed Plaintiff's state law claims for false arrest and malicious prosecution. (ECF No. 9.) Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(c), motion for judgment on the pleadings. (Defs.' Mot. Dismiss, ECF No. 14.)

## II.     Legal Standard

Defendants bring this motion to dismiss pursuant to Fed. R. Civ. P. 12(c), moving for judgment on the pleadings. "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Like a Rule 12(b)(6) motion to dismiss, "[t]o survive the Rule 12(c) motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Daily Services, LLC*, 756 F.3d at 898 (citing *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)). The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (reviewing a "district court's decision granting a Rule 12(c) motion . . . under the same *de novo* standards as one granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6)"). The Court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id*. "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id*. "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id*.

## III.     Analysis

Defendants assert that Plaintiff's claims ignore his own behavior at the July 13, 2021 city council meeting. They argue that Plaintiff's comments included comments that are not protected speech, and were the sole stated bases for the criminal investigation

and misdemeanor charge. Defendants accuse Plaintiff of conflating protected speech with unprotected speech to side-step the requirements of 42 U.S.C. § 1983.

As an initial matter, Defendants submit five exhibits and argue that as public records, these exhibits may be considered without converting their motion to one for summary judgment. The exhibits include: the video exhibit of the July 13, 2021 city council meeting; the Warren Police Department case report about the July 13, 2021 occurrence; the misdemeanor complaint about the occurrence; a transcript of the July 27, 2021 arraignment related to the occurrence; and an excerpt from the City of Warren charter. (ECF Nos. 14-1 through 14-6.) Plaintiff does not dispute that these documents and the video are matters of public record. He generally argues that Defendants have transformed their motion to dismiss into a motion for summary judgment, which would be inappropriate at this time due to the current status of discovery.

The exhibits, including the video, may be properly considered. The documents and video are public records. If Plaintiff's "pleadings internally contradict verifiable facts central to his claims, that makes his allegations implausible." *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). In such an instance "courts have considered videos when granting motions to dismiss." *Id.*

### A. Whether Plaintiff Has Pled a 42 U.S.C. § 1983 First Amendment Retaliation Claim

"A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citation omitted). Defendant points out that "[b]ecause vicarious liability is inapplicable [in] § 1983 suits, a plaintiff must plead that each Government-official defendant, through

6

the official's own individual actions, has violated the Constitution." *Barkovic v. Attorney Grievance Commission*, 289 F. Supp. 3d 833, 843 (E.D. Mich. 2017) (citing *Iqbal*, 556 U.S. at 676). "The plaintiff must establish the liability of each individual defendant by that person's own conduct." *Id.* at 843. Plaintiff brought suit against several defendants and must allege that each defendant acted under color of state law and "must allege that each defendant, through that defendant's own actions, 'subject[ed]' him (or 'cause[d]' him to be subjected) to the constitutional deprivation." *Rudd v. City of Norton Shores*, 977 F.3d 503, 512 (6th Cir. 2020) (citation omitted).

### 1.    Deprivation of a Right Secured by the Constitution

To satisfy the first element of his § 1983 First Amendment retaliation claim, Plaintiff must show three things: "(1) he engaged in protected conduct; (2) the defendants took an adverse action against him; and (3) a causal connection exists between the two." *Rudd*, 977 F.3d at 513.

"Section 1983 provides a cause of action for First Amendment retaliation if a plaintiff shows that: '(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Snodgrass-King Pediatric Dental Assocs. v. DentaQuest USA Ins.*, 780 F. App'x 197, 204 (6th Cir. 2019) (internal citations and quotations omitted). The "First and Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action...." *Id.* (citations omitted).

The parties concede that the First Amendment protects an individual speaking as a public citizen regarding a public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 418

7

(2006). Even "a protester's right to express their opposing views in a public forum was clearly established so long as they were not disruptive and did not pose a threat to public safety." *Harcz v. Boucher*, Case No. 21-1664, 2023 WL 5666159, at *3 (6th Cir. Sept. 1, 2023) (citing *Harcz v. Boucher*, 763 F. App'x 536, 543-44 (6th Cir. 2019)). Plaintiff pleads that his speech at the council meeting was constitutionally protected. (ECF No. 1 ¶ 38.) Plaintiff was speaking as a public citizen at the meeting. (ECF No. 1 ¶ 12, 18, 19, 20, 24.) He was speaking on a matter of public concern: the mayor's re-development plan and corruption he perceives in the city government. (ECF No. 1 ¶¶ 11-20.) Plaintiff's allegations would plausibly support the element that he was engaged in a constitutionally protected activity.

Defendants focus on the exchange with Defendant Bell to argue that threats Plaintiff made are not protected speech. "[I]t is well established that true threats, unlike political hyperbole and other protected speech, are not protected by the First Amendment." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). In this instance, the words at issue were "I'm going to take you out, Buddy."[3] Defendants argue that this language is not protected by the First Amendment.

Specific threatening speech can be unprotected but in this instance the statement contains none of the hallmarks to meet this limited exception and find that this was a "true

---

[3] Defendants in their reply brief attempt to focus on the statements as reported to the Warren Police Department, which include a further comment, "I will take you out right now with a blind eye." (ECF No. 14, PageID.78; ECF No. 21, PageID.204.) Yet these words are not clear from the video, and relying on Defendant Bell's statement to police which is chronologically slightly different than the video portrays, as well as arguing which statement is actually at issue, raises questions of fact beyond the scope of this motion.

threat." *Landham*, 251 F.3d at 1080-81, 1087; *see also United States v. Hankins*, 195 F. App'x 295, 301 (6th Cir. 2006) ("[T]he Government may punish "true threats" because the First Amendment does not protect threats of violence.") "A true threat is a statement that 'an objective, rational observer would tend to interpret, in its factual context, as a credible threat.'" *Hankins*, 195 F. App'x at 301. "A statement's context must be considered in determining whether it is a true threat." *Id.* "The jury determines whether a statement is a true threat." *Id.*

Here, Plaintiff's statement "I'll take you out" was made at a public city council meeting, by Plaintiff as he stood at the podium making comments. (ECF No. 1 ¶¶ 19, 20.) From the video, Defendant Bell makes comments from the audience directed at Plaintiff. (*Id.*). Plaintiff responds in full, "Shut up, buddy. I'll take you out." Plaintiff then asks of the council, "Will you please tell him to shut up?" The words themselves are ambiguous, "take you out" does not threaten a specific type of harm, and in this context could be interpreted as "take you out" of the meeting or building, because it is in response to a disruption of Plaintiff's address to the city council. *See generally Hankins*, 195 F. App'x at 301 (The defendant made statements that he wanted the director "crippled," hospitalized from a bullet wound, "offered to pay a murdered $20,000 to perform the shooting, and that he could "kill [him] tomorrow. . .  right in his . . . office." The court found that the violent context of the statement, the private location in which they were made, and the impending criminal trial about which he was angry, supported a finding that his "statements were not protected by the First Amendment."). In this public context and given the ambiguity and lack of specificity of the comment, at this stage, the Court finds for purposes of the motion to dismiss that this speech was also protected by the First Amendment. The pleadings

make allegations sufficient to allege that Plaintiff was engaged in conduct protected by the First Amendment.

With respect to an adverse action taken by Defendants, Defendants argue that the "adverse action plead is that [Defendant] Bell filed a police report against Plaintiff . . . , which, after police investigation, was prosecuted by the City of Warren Attorney's Office as a misdemeanor assault." (ECF No. 14, PageID.79.) Plaintiff identifies multiple adverse actions taken against him including the heckling and disruption by Defendant Bell at the council meeting, the video of which was posted to the city's official website, and Plaintiff's arrest and subjection to a criminal legal action based on the meritless claims of Defendant Bell. (ECF No. 20, PageID.189; ECF No. 1 ¶¶ 19, 20, 23, 26, 27-30, 36, 39.) Plaintiff argues that these actions further accomplish the goal of silencing his public criticism of the mayor. He responds that "[a]s an ordinary citizen, this humiliation and damage to his reputation, coupled with the meritless arrest and criminal charges, clearly would deter an average person from continuing to speak out against the mayor within their First Amendment right." (ECF No. 20, PageID.189; *see also* ECF No. 1 ¶¶ 22-31.) Plaintiff has sufficiently plead adverse acts.

Finally, Plaintiff must show "a causal connection between his protected conduct and the injurious actions that the defendants allegedly took." *Rudd*, 977 F.3d at 515 (citation omitted). "The defendants' retaliatory animus "must be a 'but-for' cause" of the actions, meaning that they would not have taken them but for the fact that [the plaintiff] engaged in protected conduct." *Id.* (citation omitted). Plaintiff's complaint plausibly alleges causal connection. He asserts that specific actions were taken to "silence and/or deter" him from "making future comments against [Defendant[ Fouts' political agenda," to deter

him from speaking at the meetings, and that Defendant Fouts' hated him because of his "frequent and outspoken criticism of the Mayor at City Council meetings." (ECF No. 1 ¶¶ 22-24.) The adverse actions of which Plaintiff complains all happened in close temporal proximity to his speaking out at the July 13 city council meeting, and even had the effect of infringing on his ability to attend at least one more upcoming meeting.[4] *See id.* at 515-16. Plaintiff has plausibly pled the first element of the First Amendment retaliation claim.

### 2.    Acting Under Color of State Law

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Davis v. Robert*, 192 F. Supp. 3d 847, 853 (E.D. Mich. 2016.) With respect to Defendant Fouts, Defendants argue that "[w]hen a state official is acting 'in the ambit of their personal pursuits,' they are not acting under color of state law." *Id.* at 854. "Thus, 'private conduct, outside the course or scope of [a state official's] duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.'" *Id.* at 854 (citation omitted). Defendants focus on one adverse act, the filing of the police report. Defendants argue that even assuming that Defendant Fouts urged Defendant Bell to file the police report, this is not a state action because any individual can make a police report with the city police department. (ECF No. 14, PageID.80.) .

In *Meadows v. Enyeart*, the defendants were septic system regulators and plaintiffs were septic system installers. *Meadows v. Enyeart*, 627 F. App'x 496, 497 (6th Cir. 2015).

---

[4] "Vanderlinden was not released from custody in time to participate in the July 27, 2021 city council meeting." (ECF No.1 ¶ 29.)

After the defendants denied the plaintiffs' request to approve a particular unit, the plaintiffs began to publicly criticize the defendants, including attending a public meeting and accusing the defendants of acts of corruption. *Id.* at 498. The defendants then retained a private attorney to send a cease and desist letter to the plaintiffs. *Id.* They did not act out of a state-imposed duty and they were motivated to safeguard their personal reputations. *Id.* at 501. "Because any person may hire a private attorney to threaten private legal action, it cannot be said that the letter was 'possible only because [the Defendants were] clothed with the authority of state law.'" *Id.* (citation omitted). The "'nature of the act performed' was 'functionally equivalent to that of any private citizen.'" *Id.* at 501 (citation omitted). They did not act under color of state law in sending the cease-and-desist letter. *Id.* In addition, due to customer complaints against the plaintiffs' company and septic system malfunctions, the Health Department ultimately initiated an administrative hearing about one of the plaintiffs. *Id.* at 498. The plaintiffs "claim that the proceeding was retaliation for the critical remarks" about the defendants. *Id.* at 499. The court held that the hearing was "unquestionably an exercise of 'power possessed by virtue of state law' and therefore the [d]efendants acted under color of state law." *Id.* at 501.

The Sixth Circuit has found that where allegations that "the mayor and other city officials—on city time and in city offices—plotted to injure plaintiff for his political views", and in light of a "resolution and ordinance demonstrating hostility toward plaintiff, these allegations, if proved, are sufficient to support a conclusion that defendants were acting under color of official right." *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994).

Plaintiff's pleading goes beyond beyond the narrow act of filing a police report. While the action of filing a police report may be undertaken by any individual, Plaintiff's

allegations also focus on the adverse act of the resultant arrest, any subsequent and intended public humiliation, and subjection to the resultant assault charges. (ECF No. 1 ¶¶ 39, 26-31.) Plaintiff alleges that Defendant Fouts instructed Defendant Bell to attend the city council meetings and protect the mayor, his agenda and reputation and deter Plaintiff from speaking. (ECF No. 1 ¶ 23.) Defendant Bell disrupted Plaintiff speaking at the meeting by heckling him. (ECF No. 1 ¶¶ 19, 20, 39.) Defendant Fouts also told Defendant Bell to "get [Joel Vanderlinden's] ass" following the July 13 meeting. (Id. at ¶ 25.)

The Court notes that Plaintiff also alleges that when he found out there was a warrant for his arrest and turned himself in at the Warren Police Department, "one officer admitted to Vanderlinden that the original orders were for Vanderlinden to be publicly arrested at the next city council meeting, which was scheduled to take place later that day." (ECF No. 1 ¶ 27.) This is followed by the allegation that "Mayor Fouts' goal was to publicly humiliate Vanderlinden in an effort to silence one of his most outspoken critics." (Id. at ¶ 28.) This is an allegation regarding the details of effectuating his arrest. Although Defendant argues that under the City of Warren Charter, the City Attorney is not subject to mayoral oversight with regard to his decisions to authorize warrants or prosecute offenses within the city, Defendants concede that the "City's Police Department is nominally under the authority of the Mayor." (ECF No. 14, PageID.80-81.)

The City of Warren Charter provides that the "executive head of the police department shall be the commissioner," this department head "shall be appointed by the mayor and shall be under his supervision and control, and shall be responsible to him in all respects." (City of Warren Charter § 7.17, ECF No. 14-6, PageID.115.) The factual

inference can be made that Defendant Fouts may have had some control over determining the manner of effectuating the arrest. *See generally Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 294-95 (6th Cir. Apr. 8, 2004) ("Because [the mayor] was not the decisionmaker, he cannot be held liable under § 1983 for the City Council's decisions regarding [the plaintiff's] terms and conditions of employment . . . .").

Accepting Plaintiff's factual allegations as true and construing them in the light most favorable to him, the Court determines that these are plausible allegations that support a claim that Defendant Fouts acted under color of state law.

Defendants argue that Plaintiff does not allege any facts to plausibly demonstrate that Defendant Bell should be treated as a state actor. "A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." *Tahfs*, 316 F.3d at 590 (internal quotation marks and citations omitted). "First and Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action. . . ." *Snodgrass-King Pediatric Dental Assocs.*, 780 F. App'x at 204.

"[T]here are circumstances under which private persons may, by their actions, become "state actors" for § 1983 purposes. Private persons, jointly engaged with state officials in [a] prohibited action, are acting under color of law for purposes of the statute. To act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Tahfs,* 316 F.3d at 590 ((internal quotation marks and citations omitted).

Defendants argue that the Sixth Circuit set forth four different tests to make such a determination. *See Snodgrass-King Pediatric Dental Assocs.*, 780 F. App'x at 204. They

14

are: "(1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Id.*

Yet Plaintiff alleges a conspiracy by Bells with Defendant Fouts.

[T]o act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see (sic) "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *see also Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007) ("Such claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss. But as addressed above, we have determined that Eaton is entitled to summary judgment in part because he did not act according to any plan or conspiracy to violate Revis's constitutional rights.")

As set forth below, Plaintiff makes allegations with enough specificity to plead a conspiracy between two Defendants at this stage. "Defendants Mayor Fouts and Jerry Bell concocted a plan seeking [to] discipline and/or punish Plaintiff because of his constitutionally protected speech." (ECF No. 1 ¶ 84.) "Acting jointly, Defendants engaged and participated in, . . . a conspiracy, the predominate purposes of which was to unconstitutionally deprive Plaintiff of his right of freedom of speech guaranteed under the First Amendment . . . ." (*Id.* at ¶ 85.) Specifically, Plaintiff alleges that Defendants Bell and Fouts concocted a plan to silence or deter Plaintiff from making future comments against Defendant Mayor Fouts' political agenda by accusing Plaintiff of assaulting Bell during the July 13, 2021 city council meeting. (ECF No. 1 ¶ 22; *see also id.* ¶¶ 23, 24, 25, 27, 28.) Plaintiff alleges not only that Defendant Fouts told Defendant Bells to "get [Joel

Vanderlinden's] ass" after that meeting, but when Defendant Bells later was ready to drop the charges against Plaintiff, Defendant Fouts had "a fit" and ordered Defendant Bell to continue to pursue the charges. (ECF No. 1 ¶¶ 25, 30.) Therefore the Court finds that Plaintiff has pled a plausible claim of First Amendment retaliation as to Defendants Fouts and Bell. *See Revis*, 489 F.3d at 292 ("the issue of the private-party defendants' role in the alleged conspiracy could not ordinarily be resolved at the pleading stage").

### B.  Whether Plaintiff has Plead Malicious Prosecution

Defendants argue that Plaintiff has not stated a cognizable malicious prosecution claim against Defendant Fouts. The Sixth Circuit recognizes "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (citation omitted). To succeed on a malicious prosecution claim, Plaintiff "must prove the following (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Id.* at 616.

First, Defendants argue that Plaintiff "pleads no allegation that Defendant Fouts participated or influenced the criminal investigation or decision to prosecute the misdemeanor assault claim against Plaintiff. (ECF No. 14, PageID.87-88.) Plaintiff argues that his conspiracy allegations make the acts committed by Defendant Bell attributable to

Defendant Fouts. The Court need not reach this issue, because Plaintiff's claim fails in part for failing to identify the false or misleading statements in the police report.

"Bare assertions that [the plaintiff] was prosecuted based on 'false information' and 'without probable cause' are legal conclusions, not specific factual allegations necessary to survive a motion to dismiss." *Rapp v. Putman*, 644 F. App'x 621, 627 (6th Cir. 2016). Plaintiff responds that "Plaintiff did allege that Defendant Bells' police report contained false information, as it routinely and correctly referred to them as fabricated. Further, the facts alleged in the complaint contradict those in the police report, which must be taken as true." (ECF No. 20, PageID.197.) The allegations in the complaint referring to, for example, "fabricated assault charges," are not specific enough to survive a motion to dismiss. (ECF No. 1 ¶ 31.)

Defendants also argue that Plaintiff did not plead a deprivation of liberty. In *Rapp v. Putman*, the Sixth Circuit held that the third element, "deprivation of liberty" is not satisfied by a "continuing seizure" such as being subject to appear in court and answer the state's charges. *Rapp v. Putman*, 644 F. App'x 621, 628 (6th Cir. Mar. 29, 2016) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). Plaintiff relies on *Noonan v. County of Oakland*, to argue that "[t]his Court has recognized that a defendant would suffer a deprivation of liberty apart from the initial seizure if they are subject to bond conditions or restrictions." (ECF No. 20, PageID.198, citing *Noonan v. County of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017)). Then Plaintiff explains the case as "recognizing that a plaintiff is deprived of liberty when they are 'arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions.'" (ECF No. 20, PageID.198.) The actual statements taken in context from the Sixth Circuit in *Noonan* do not clearly establish such a

deprivation of liberty. Even considering the state court judge's restriction that Plaintiff not attend the next city council meeting if Bell were there, Plaintiff has not pled a deprivation of liberty necessary to support this element of his claim.

For these reasons, the Court will grant Defendants' motion to dismiss as to the malicious prosecution claim.

### C.  Whether Plaintiff has Plead a 42 U.S.C. § 1985 Conspiracy Claim

> The elements of a § 1985 conspiracy claim are: 1) a conspiracy; 2) for purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Riddle v. Egensperger*, 266 F.3d 542, 549 (6th Cir. 2001) (citation omitted). Defendants first argue that because there has been no deprivation of a constitutional right, this claim is foreclosed. As set forth above, Plaintiff has plausibly pled a First Amendment Retaliation claim. Next Defendants argue that Plaintiff has not identified under which provision of 42 U.S.C. § 1985 he is seeking relief, fails to specify any facts related to § 1985(1) or (2), and as to § 1985(3), does not allege racial or another class-based discriminatory animus.

It is true the complaint does not identify under which section of 42 U.S.C. § 1985 Plaintiff seeks relief. In his response, Plaintiff identifies § 1985(3) as the basis of his claim and points out how his allegations support the elements of a § 1985(3) claims. Under both § 1985(2) and § 1985(3), "a plaintiff must allege that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Fox v. Michigan State Police Dept.*, 173 F. App'x 372, 376 (6th Cir. Feb. 24,

2006). Plaintiff argues that the Defendants' conspiracy sought to deprive him of his constitutional rights because of his lack of support of the mayor and his policies.

The Sixth Circuit has held that "§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate." *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) (A supporter of the sheriff's opponent for election was distributing strongly worded pamphlets against the sheriff. The sheriff and a deputy "were informed of the presence of some of the pamphlets in a truck in a local garage," so threatened the owner of the truck and later arrested the appellee, who was distributing the pamphlets on the main street, with a warrant of which the charge changed multiple times.). "If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)." *Id*. In *Cameron*, the Sixth Circuit noted that "[t] he appellants conspired to deprive the appellee of his rights and the purpose of the deprivation was to halt or discourage anti-Brock activity on the part of the challenger's supporters. The elements of a § 1985(3) suit were present and the jury had sufficient evidence before it to find for the appellee, as it did." *Id*. at 610.

Like *Cameron*, plaintiff has made sufficiently detailed allegations that Defendants Fouts and Bell were acting intentionally because of Plaintiff's vocal and public opposition to the Mayor and his redevelopment plan. Plaintiff "has also made public comments against the re-development plan and the corruption that he perceived in the city government at various City of Warren city council meetings." (ECF No. 1 ¶ 18.) "[Defendant] Jerry Bell and [Defendant] Mayor Fouts concoct (sic) a plan to silence and/or deter [Plaintiff] Vanderlinden from making future comments against Mayor Fouts' political agenda by accusing Vanderlinden of assaulting Bell during the July 13, 2021, city council

19

meeting. (*Id.* at ¶ 22.) "[Defendant] Mayor Fouts instructed [Defendant] Bell to go to the Warren City Council meetings and protect the Mayor and his reputation and agenda, including but not limited to, deterring Vanderlinden from speaking at the meetings." (*Id.* at ¶ 23.) "[Defendant] Mayor Fouts hated [Plaintiff] Vanderlinden because of Vanderlinden's frequent and outspoken criticism of the Mayor at City Council meetings." (*Id.* at ¶ 24.) "[Defendant] Mayor Fouts' goal was to publicly humiliate [Plaintiff] Vanderlinden in an effort to silence one of this most outspoken critics." (*Id.* at ¶ 28.)

These allegations also support the other elements of a 1985(3) claim, including alleging a conspiracy and that its purpose was to deprive Plaintiff of his First Amendment right to speak at the city council meeting. Plaintiff alleges specific overt acts, including Defendant Fouts instructing Defendant Bell attend the city council meetings, protect the Mayor and his reputation and agenda, and deter Plaintiff from speaking. (ECF No. 1 ¶ 23.) Defendant Bell attended and heckled Plaintiff. (ECF No. 1 ¶ 20.) After the meeting Defendant Fouts told Defendant Bell to "get [Joel Vanderlinden's] ass." (ECF No. 1 ¶ 25.) After the meeting Defendant Bell filed a police report against Plaintiff. As Plaintiff points out, but for the police report, the state court judge would not have prevented him from attending the upcoming city council meeting if Defendant Bell were present. Plaintiff's allegations are specific and plausible. Defendants' motion to dismiss the § 1985 claim is denied.

### D.  Whether Plaintiff Sufficiently Plead a 42 U.S.C. § 1983 *Monell* Claim

Finally, Plaintiff brings a derivative claim for *Monell* liability against the City of Warren for violation of 42 U.S.C. § 1983. "*Monell* holds that municipalities may be held liable for the constitutional violations of their employees only where the municipality's

policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694–95 (1978)). In addition to establishing that the plaintiff's constitutional rights were violated, the plaintiff must establish "that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac County*, 606 F.3d 240, 254-55 (6th Cir. 2010). Defendants argue that there "can be no liability under *Monell* without an underlying constitutional violation." As set forth above, the Court has found that Plaintiff pled a viable constitutional violation.

> There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."

*Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 (6th Cir. 2020) (citation omitted).

In the complaint, Plaintiff alleges that Defendant City of Warren maintained policies, customs and practices that were a moving force in the constitutional violations he asserts in his complaint, and specifically pleads that these actions included:

> a.    Directing humiliating, outrageous, and belittling antagonism toward those who speak out against the City of Warren;
> b.    Targeting political opponents through the use of law enforcement. *See Schroder v. City of Warren, et al.,* Case No. 12-10582.
> c.    Failure to train its employees as to the mandatory requirement that discriminatory practices based on an individual engaging in political speech are inexcusable and will be responded to with outright discharge; and
> d.    Failure, amounting to a refusal, to discipline its employees for discriminatory practice based on a person choosing to engage in political speech.

(ECF No. 1 ¶ 49.) The *Schroder* case involved City of Warren employees and references Mayor Fouts, as well. With no further information as to why the case was ultimately

dismissed by stipulation[5], it identifies at least one instance which would have put the municipality on notice of the unconstitutional behavior of targeting and attempting to deter political opponents. *Miller*, 606 F.3d at 255 ("To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'"). The Court finds that with the specificity of the allegations above, Plaintiff has plead enough to withstand Defendants' motion to dismiss on this claim.

## V.    Conclusion

For the reasons stated herein, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss the complaint (ECF No. 14). Defendants' motion to dismiss is GRANTED as to Plaintiff's malicious prosecution claim (count IV) and that count is dismissed. Defendants' motion is DENIED as to Plaintiff's 42 U.S.C. § 1983 First Amendment Retaliation claim (count I), the 42 U.S.C. § 1983 *Monell* claim against Defendant City of Warren (count II) and the 42 U.S.C. § 1985 conspiracy claim (count VI).

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 28, 2023

---

[5] Defendants point out that the *Schroder* case was dismissed by stipulation and with prejudice just after the defendants filed a motion for summary judgment. It is worth noting that allegations in the complaint relating to a contentious relationship between the plaintiff and defendants survived the defendants' earlier motion to strike paragraphs. *Schroder v. City of Warren*, Case No. 2:12-cv-10582 (ED Mich. June 25, 2012) (ECF No. 20, PageID.102)

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2023, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager