UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL VANDERLINDEN,

      Plaintiff,                                Case No. 22-11060

                                             Honorable Nancy G. Edmunds

v.

CITY OF WARREN, et al

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [56]**

      This matter is before the Court on Defendants' motion for summary judgment on counts I, II, and VI of Plaintiff's complaint. (ECF No. 56.) The Court previously dismissed counts III, IV and V. (ECF Nos. 9, 35.) Plaintiff's remaining claims are for First Amendment retaliation under 42 U.S.C. § 1983 against Defendants Fouts and Bell, *Monell* liability of Defendant City of Warren, also under 42 U.S.C. § 1983, and conspiracy under 42 U.S.C. § 1985(3). For the following reasons, the Court GRANTS Defendants' motion as to the conspiracy claim and DENIES the motion as to Plaintiff's retaliation claim against Defendants Fouts and Bell and the *Monell* liability claim against the City of Warren.

      Plaintiff Joel Vanderlinden ("Plaintiff") is a resident of the City of Warren and an active participant in local politics. Defendant Jerry Bell ("Defendant Bell") is also a politically active Warren resident, and Defendant James Fouts ("Defendant Fouts") was the mayor of the City of Warren at the time events related to the present claims

1

occurred. Following Plaintiff's public comments in opposition to Defendant Fouts'
political goals and a heated exchange between Plaintiff and Defendant Bell at the July
13, 2021, Warren city council meeting, Plaintiff alleges that Defendant Fouts met with
Defendant Bell and Ethan Vinson[1] ("Vinson"), then the Attorney for the City of Warren,
to conspire to silence Plaintiff's public opposition. (ECF No. 56, PageID.479.) Plaintiff
alleges that Vinson and Defendants Bell and Fouts planned to accomplish this by
having Plaintiff arrested to prevent Plaintiff from making public comments at future city
council meetings. (ECF No. 61, PageID.1370–1.) Plaintiff claims that this conspiracy
was in retaliation for Plaintiff's regular comments opposing Defendant Fouts' political
goals at previous meetings. *Id.* Defendant Fouts allegedly instructed Defendant Bell to
accuse Plaintiff of assault to "teach him a lesson." *Id.* at PageID.1371. Defendant Fouts
also allegedly directed Vinson to assist Defendant Bell with the arrest warrant and
requests for pre-trial detention measures that would prevent Plaintiff from attending and
speaking at future council meetings. (ECF No. 61, PageID.1391.) Plaintiff was arrested
and detained and prevented from attending two city council meetings in 2021 because
of these measures. (ECF No. 56-3, PageID.667.)

Defendants submitted several matters of public record to support their motion to
dismiss, including video of actions at the July 13, 2021 city council meeting that were
the basis of Plaintiff's arrest; the Warren Police Department case report about those
July 13, 2021 actions; the misdemeanor complaint about the occurrence; a transcript of
the July 27, 2021 arraignment related to the occurrence; and an excerpt from the City of
Warren charter. (ECF Nos. 14-1 through 14-6.) After discovery, Defendants now submit

---

[1] Vinson is not a party in this case.

depositions from Plaintiff, Defendants Bell and Fouts, Vinson, Michelle Nard (another politically active Warren resident) and police sergeant Michael Lewis to further establish the absence of evidence to support Plaintiff's claims. (ECF No. 56-1, PageID.498.) Plaintiff relies on his own deposition.

Plaintiff testified that Jerry Bell confessed to him that Fouts told Bell to pursue criminal charges against Vanderlinden while Bell, Fouts, and Vinson were at a meeting at City Hall; that Michelle Nard told Plaintiff that Bell also confessed this to her; and that Plaintiff saw Vinson at Defendant Bell's criminal arraignment hearing, helping him. (ECF No. 56-3, PageIDs.598, 677, 683–86.) Defendants point out that Defendant Bell, Defendant Fouts, Vinson and Michelle Nard all denied these claims in their own depositions. (ECF No. 56, PageID.488.)

## I.    Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the

nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## II.  Analysis

### A.  Conspiracy

To bring a civil conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation omitted). The conspiracy must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976) (explaining that a § 1985(3) claim "must be founded on a class-based invidious discrimination."). The Sixth Circuit has further held that "(1) classes who receive heightened protection under the Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental rights" may successfully bring a 1985(3) claim. *Bartell v. Lohiser,* 215 F.3d 550 (6th Cir. 2000). Because Plaintiff claims the conspiratorial objective was retaliation, Plaintiff must also show that the state was somehow involved in or affected by the conspiracy, because the First Amendment only restrains official conduct. *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 833  (1983).

4

At the heart of Plaintiff's conspiracy claim is his political opposition to Mayor Fouts and the Mayor's retaliatory efforts to keep Plaintiff from speaking out against him. In his deposition, however, Plaintiff relays a more complex history with Fouts, beginning in 1983. (ECF No. 61-2, PageID.1445.) Throughout the ensuing years when both Plaintiff and Fouts operated in the political circles of Warren, Plaintiff has at times been a political supporter of Fouts, and even a confidante. (ECF No. 56-3, PageID.571.) In his deposition, Plaintiff explains his disagreement with Fouts at the center of these claims, clarifying that his opposition is not broadly political. (ECF No. 56-3, PageID.570.) Rather, the present dispute only involves Plaintiff's opposition to one element of Fouts' economic plan for Warren's downtown district: the construction of a five-star hotel. *See* ECF No. 56-3, PageID.570 ("Q: What was your position on the downtown development? A: I was against the downtown development. Let me take that back. I was against the hotel. Q: So not against the whole development, just the hotel? A: Just the hotel."). Plaintiff further clarified in his deposition that the alleged conspiracy to silence him at city council meetings was directed specifically at his opposition to this hotel. *See* ECF No. 56-3, PageID.679-80:

> **Q:** Did Bell tell you … that Fouts wanted to charge you with this to keep you from speaking out against him?
> **A:** Yes.
> **Q:** And did he explain what he meant when he said Fouts wanted to teach you a lesson?
> **A:** Yes.
> **Q:** What did he say?
> **A:** He said too many people were repeating the things that I was saying at the council meetings as to reason why they didn't believe in this hotel being built. There's ten hotels. I ain't going into that.
> **Q:** Okay. But it was directly related to your opposition to the hotel being built?
> **A:** Yes.

The hotel was expensive, and thus a contentious issue for many city residents. *See* ECF No. 56-3, PageID.566 ("The mayor was proposing to spend upward of 280 million for a hotel.") At the July 13 city council meeting, several other Warren residents spoke both for and against city spending and the mayor's proposed downtown development plan. (ECF No. 56, PageID.473.) Despite his alleged role in the conspiracy to silence Plaintiff because of his outspoken opposition to the hotel, Defendant Bell seemed to share some of Plaintiff's concerns in his deposition. *See* ECF No. 56-4, PageID.738 (Bell stated that "[i]nstead of it being a five star [hotel], you know, I would have wanted something that would have been more affordable.")

The Sixth Circuit has held that "§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate." *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973). Since that decision, however, and following the Supreme Court's decisions in *United Bhd. of Carpenters v. Scott*, 463 U.S. 825 (finding that section 1985(3) does not reach conspiracies motivated by bias towards others on account of their economic views) and *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) (holding that women seeking abortions were not a protected class), the Sixth Circuit has narrowed its reasoning without explicitly overturning *Cameron*, holding that to be protected by § 1985(3), a class "must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (1994); *see also*, *Bartell v. Lohiser,* 215 F.3d 550, 560 (6th Cir. 2000) (quoting *Browder v. Tipton,* 630 F.2d 1149, 1150 (6th Cir. 1980)) ("Section 1985(3) covers only those 'conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who

join together as a class for the purpose of asserting certain fundamental rights.'") and *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (quoting same) ("Section 1985(3) reaches only conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework.").

Defendants argue that Plaintiff cannot establish discriminatory animus that meets this standard to prove a civil conspiracy. (ECF No. 56, PageID.495.) Defendants explain that Plaintiff cannot claim protection as an opponent of a "political candidate" under *Cameron* where Fouts was not a candidate for any office at the relevant time. (ECF No. 62, PageID.2194.) Defendants also argue that Plaintiff cannot establish that either Defendant Fouts or the City of Warren had any role in Defendant Bell's decision to file a police report or pursue charges against Plaintiff to establish a conspiracy. They argue, therefore, that they are also entitled to summary judgment because Plaintiff fails to present evidence to show Defendants ever conspired to interfere with his constitutional rights. (ECF 56, PageID.494-495.)

This Court held that Plaintiff had adequately pled his claim of conspiracy based on a class defined as supporters of a political candidate under *Cameron* to survive Defendant's motion to dismiss. (ECF No. 35, PageID.292.) In his response to the present motion, Plaintiff relies entirely on the Sixth Circuit's decision in *Cameron* to establish the class animus required for his conspiracy claim. (ECF No. 61, PageID.1400.) At the present stage, however, the facts presented show that Plaintiff's opposition was not to Fouts as a political candidate, but rather to a specific item in the mayor's economic development plan. (ECF No. 56-3, PageID.570.)

7

In *Carpenters*, the Supreme Court held that section 1985(3) does not reach conspiracies "motivated by bias towards others on account of their *economic* views...." 463 U.S. at 837 (finding that the plaintiffs' nonunion employees constituted an economic class only and hence were not protected by section 1985(3).). In *Bray v. Alexandria Women's Health Clinic,* the Supreme Court held that abortion clinics and supporting organizations claiming that protesters conspired against them had not proven a class-based, invidiously discriminatory animus. 506 U.S. at 270. It found that "women seeking abortions" were not a protected class because "the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Id.* at 269. After *Bray*, the Sixth Circuit held that to be protected by § 1985(3), a class "must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enters.,* 32 F.3d at 994; *see also Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 499 (6th Cir. 2004) (collecting cases).

After these rulings, courts in this circuit have declined to extend the protection of supporters of a political candidate found in *Cameron* to classes based on opposing political viewpoints. Instead, decisions post-*Bray* recognize class bias based on classifications that would receive heightened scrutiny under the Supreme Court's equal-protection framework. *See Lee v. Miller*, No. CV 15-14255, 2017 WL 6621544, at *7 (E.D. Mich. Dec. 28, 2017) (collecting cases) (holding that people who were political supporters of a candidate for county sheriff and employed by the sheriff's department were not a type of class the Sixth Circuit has found protected by § 1985(3) subsequent to *Bray*) and *Borke v. Warren*, No. 20-CV-12774, 2022 WL 525839, at *7 (E.D. Mich.

Feb. 22, 2022), aff'd, No. 22-1270, 2023 WL 6367754 (6th Cir. Aug. 2, 2023) (same) (holding that a group of 'water protectors' is not a class entitled to protection under § 1985(3)).

This Court does not believe that the facts support Plaintiff's claim that he falls within a class of "discrete and insular minorit[ies]" that the Sixth Circuit has found protected by § 1985(3). On this basis, the Court grants summary judgment to Defendants on Plaintiff's § 1985(3) claim.

## B. Retaliation

Plaintiff claims First Amendment retaliation under 42 U.S.C. § 1983 against Defendants Fouts and Bell. Section 1983 affords a plaintiff relief from constitutional violations committed by state actors. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). To demonstrate that he suffered the deprivation of a right secured by the Constitution or laws of the United States to satisfy the first element of his § 1983 First Amendment retaliation claim, Plaintiff must show three things: "(1) he engaged in protected conduct; (2) the defendants took an adverse action against him; and (3) a causal connection exists between the two." *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020). Plaintiff must establish the liability of each individual defendant by that person's own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Additionally, because First Amendment protections are only triggered by state action, Plaintiff must also establish that both Defendants Bell and Fouts acted under color of state law. *Snodgrass-King Pediatric Dental Assocs. v. DentaQuest USA Ins.*, 780 F. App'x 197, 204 (6th Cir. 2019).

To support his retaliation claim, Vanderlinden pled the following adverse actions: (a) Bell's filing of a police report (b) the resultant arrest of Vanderlinden; (c) the resultant

9

assault charges; and (d) that Vanderlinden was disrupted by Bell when speaking at the July 13, 2021 meeting. (ECF No. 35, PageID.286.) Defendants argue that none of these adverse actions involve Defendant Fouts' "own individual actions" to establish a basis for the necessary state action element. (ECF No. 56, PageID.484.) Plaintiff claims that Fouts directed the action, but Defendants argue that Plaintiff's retaliation claim fails because no facts support that Fouts directed Bell to take any action, and there is no evidence that Fouts took any action in retaliation himself. (*Id*. at PageID.485-86.) Further, Defendants argue that even if there was evidence to support the claim that Fouts directed Bell to do anything, Bell cannot be considered a state actor as required under the statute. Finally, Defendants argue that Bell's threats to Vanderlinden are not protected speech, therefore Plaintiff was not engaged in any protected activity that would give rise to his claim. (ECF No. 56, PageID.489.)

In this matter, the parties do not seem to dispute that Defendants took an adverse action against Plaintiff and that there was a causal connection between Plaintiff's speech at the city council meeting and his subsequent arrest. Defendants' challenges are directed at the protected conduct and state action elements of Plaintiff's case.

### 1.    Protected Conduct

It is undisputed that the First Amendment protects an individual speaking as a public citizen regarding a public concern. *See e.g., Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Defendants focus on Plaintiff's threatening statements made to Defendant Bell at the city council meeting and argue that his words were a true threat and therefore not protected by the First Amendment. (ECF No. 56, PageID.490.) Plaintiff

argues that his statements were unspecific, brief, and made in a public forum and therefore do not rise to the level of a true threat unprotected by the Constitution. (ECF No. 61, PageID.1386.) Defendant Bell said in his deposition that he felt threatened by Vanderlinden's words at the city council meeting and so he went to the police to file a report. *See* ECF No. 56-4, PageID.749 ("That sound like a threat to me"). The Court finds there is an issue of material fact as to whether Plaintiff's speech, made from the podium at the July 13 city council meeting, was protected.

### 2.    State Action

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Davis v. Robert*, 192 F. Supp. 3d 847, 853 (E.D. Mich. 2016).

### a.    Fouts

To establish that Defendant Fouts acted under the color of state law, Plaintiff relies on the alleged conspiracy to deprive him of his First Amendment rights. (ECF No. 61, PageID.1392.) The Sixth Circuit has held that where allegations that "the mayor and other city officials—on city time and in city offices—plotted to injure plaintiff for his political views", and in light of a "resolution and ordinance demonstrating hostility toward plaintiff, these allegations, if proved, are sufficient to support a conclusion that defendants were acting under color of official right." *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994). This Court found Plaintiff had adequately pled his retaliation claim, establishing that Defendant Fouts acted under color of state law by alleging (1) Fouts instructed Defendant Bell to attend the city council meetings and protect the mayor and

to deter Plaintiff from speaking (2) Defendant Bell disrupted Plaintiff speaking at the July 13 city council meeting (3) Defendant Fouts told Defendant Bell to "get [Plaintiff's] ass" following the July 13 meeting, and (4) a police officer admitted to Plaintiff when Plaintiff turned himself in that, had he not come in voluntarily, Fouts had ordered that Plaintiff be arrested at the city council meeting later that day to publicly humiliate him. (ECF No. 35, PageID.287.) Plaintiff's claims were sufficiently specific to survive a dispositive motion prior to the completion of discovery.

Plaintiff has now testified to the same details in his claims and relies on a confession he says Defendant Bell made to him to support the same. In his deposition, Plaintiff recounted that Defendant Bell confessed to Plaintiff that he would not have filed the police report against Plaintiff if Defendant Fouts had not instructed him to do so, that this instruction happened at a meeting Fouts had with Bell and Vinson after the July 13 city council meeting, and that during this meeting, Fouts said he wanted to "teach [Plaintiff] a lesson." (ECF No. 61, PageID.1392.) Defendants argue that every witness deposed in this matter denies that any of these things were said or that any meetings occurred. (ECF No. 56, PageID.487.) Defendant Bell denies taking direction from Fouts regarding his charges filed against Plaintiff. (ECF No. 56-4, PageID.750, 843.) He also denies ever confessing any of these things to Plaintiff or even speaking to him on the matter. *Id.* at PageID.796. Defendant Fouts also denies all conspiracy charges, all meetings, and all derogatory comments made about Plaintiff attributed to him in the pleadings. (ECF No. 56-11, PageID.1068, 1095-8.) Vinson denies ever meeting with Fouts and Bell and denies having anything to do with Bell's charges against Plaintiff beyond the administrative role he played as part of his normal job responsibilities as the

12

city attorney. (ECF No. 56-8, PageID.950-1, 5.) The police officer who received Plaintiff when he turned himself in stated that he was the only one there to receive Plaintiff and that he had never heard anyone say that Plaintiff was to be arrested at the city council meeting that day, whether to publicly humiliate him or otherwise. (ECF No. 56-12, PageID.1158.) Plaintiff submits nothing to corroborate the details in his deposition or to otherwise support his claims.

Still, the Court must construe the facts in the light most favorable to the non-moving party and may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255. Because there is a question of material fact as to whether Defendant Fouts directed the criminal charges against Plaintiff in retaliation for his public comments based on conflicting testimonies, the Court denies Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendant Fouts.

#### b.     Bell

Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *United States v. Price*, 383 U.S. 787 (1966) (stating that to act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.) The Sixth Circuit has repeatedly held that "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000); *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985) ("Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983.")

13

Defendant Bell is a private citizen. This Court previously held that Plaintiff adequately alleged a conspiracy sufficient to establish state action on Bell's part allowing Plaintiff's retaliation claim to survive Defendants' motion to dismiss. (ECF No. 35, PageID.288.) Plaintiff again relies on this conspiracy in his response to this motion. (ECF No. 61, PageID.1392.)

At his deposition, Plaintiff testified that Bell told him that filing the police report was not his idea. Rather, Bell explained that Fouts and Vinson instructed him to file the police report to teach Plaintiff a lesson and prevent Plaintiff from speaking out against him at the council meetings. (ECF No. 61-2, PageID.1577-78, 1583-84.) Bell said that Vinson filled out the police report for Bell to submit. *Id.* at PageID.1582. Bell told Plaintiff that at some point he wanted to dismiss the charges, but Fouts and Vinson would not allow him to do that. (ECF No. 61-2, PageID.1541-42.) Plaintiff's testimony, if believed by the jury, is sufficient to support that Bell was a state actor under the state compulsion test relied on by Defendants. That test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Snodgrass-King Pediatric Dental Assocs.*, 780 F. App'x at 204–05 (citations omitted).

Although Bell, Fouts and Vinson deny Plaintiff's account of Bell's confession, at the summary judgment stage the Court may not make credibility determinations or weigh the evidence. *Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 404 (6th Cir. 2022) ("When witnesses tell differing stories, therefore, we cannot credit the story of the witness that we find more believable.") Therefore, the Court finds there is an issue of material fact whether Defendant Bell acted under the color of state law such that he

may be a state actor for purposes of § 1983. Summary judgment is denied as to

Plaintiff's First Amendment retaliation claim against Defendant Bell.

### C.  Monell Liability

Plaintiff alleges Monell liability of Defendant City of Warren under 42 U.S.C. § 1983.

Defendants argue that Plaintiff's Monell claim fails because there is no evidence to

support that the City of Warren maintains policies, customs and practices that target

political opponents through the use of law enforcement and/or that the City fails to train

or turns a blind eye when political opponents are targeted, as the Plaintiff claims. (ECF

No. 56, PageID.492.) Plaintiff argues that a single decision by a municipal official with

final decision policymaking authority constitutes an unconstitutional municipal policy

sufficient to attribute Monell liability to the municipality. (ECF No. 61, PageID.1393.)

Plaintiff alleges that Defendant Fouts directed Vinson, in his capacity as the City

Attorney, to assist Defendant Bell with the arrest warrant and requests for pre-trial

detention measures that would prevent Plaintiff from attending and speaking at future

council meetings. (ECF No. 61, PageID.1391.) Plaintiff argues that, because Defendant

Fouts had the authority to hire and fire the City Attorney and oversaw the administration

of the law department, that he was a policymaker for the law department.

Plaintiff attempts to establish *Monell* liability on a single-act theory, asserting that

Defendant Fouts's direction of Vinson in prosecuting Plaintiff so that he was prevented

from speaking at future city council meetings was within his policy making powers as

mayor. Under the single-act theory, a plaintiff must demonstrate that a "deliberate choice

to follow a course of action is made from among various alternatives by the official ...

responsible for establishing final policy with respect to the subject matter in question."

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  Municipal liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481. In other words, the official must be "responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 483. Defendants argue that with no city policy at issue, a single incidence of unconstitutional activity is insufficient for civil liability under *Monell*. (ECF No. 62, PageID.2194 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).) In *City of Oklahoma City*, the unconstitutional activity in question was an act of a police officer with no policy making authority, however, and does not apply in this matter. Plaintiff's testimony raises a question of material fact as to whether Mayor Fouts, who over saw the City law department, implicated the City of Warren under *Monell* through his alleged direction of the City Attorney as to Plaintiff's prosecution. For these reasons, the Court denies Defendant's motion on this count.

## IV.    Conclusion

For the foregoing, Defendants' motion for summary judgment as to conspiracy under § 1985(3) is GRANTED. The motion as to Plaintiff's First Amendment retaliation claim against Defendants Fouts and Bell and the *Monell* liability claim against the City of Warren is DENIED.

SO ORDERED.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge


Dated: September 30, 2025

16

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2025, by electronic and/or ordinary mail.

s/ Marlena Williams
Case Manager